UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ex rel. JULIE WILLIAMS, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:05-CV-00985 DJS |
| ) | |
| RENAL CARE GROUP, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND MEMORANDUM IN SUPPORT**

Come now defendants Renal Care Group, Renal Care Group Supply Company, and Fresenius Medical Care Holdings, Inc., and hereby file their Motion to Compel the Production of Documents by plaintiff and Memorandum in Support.  In support of their Motion, defendants state as follows:

**Introduction**

This suit has been brought against defendants under the False Claims Act. Plaintiff is seeking over $323 million in damages from defendants.  The lawsuit was initially filed by two qui tam relators on June 21, 2005.  The government intervened in the action on July 21, 2007.  The government imposed extensive discovery on defendants in the course of its investigation prior to filing its complaint in intervention.  On August 9, 2005, the government served RCG with a subpoena duces tecum listing 98 categories of documents to be produced. The government subpoenaed documents relating to, among other matters, organizational charts for RCG and RCG Supply; Board of Directors of RCG and RCG Supply; officers and directors of RCG and RCG Supply; financial records of RCG and RCG Supply; policies and procedures of

1

RCG and RCG Supply; acquisition of space by RCG Supply, whether by purchase, lease, rent, or gift; RCG Supply's qualifications and applications to be a DME supplier; insurance by RCG Supply; RCG Supply's service contracts; employees of RCG and RCG Supply; contracts by RCG and RCG Supply; complaints by patients about RCG and RCG Supply; the purchase of dialysis supplies by RCG Supply; RCG Supply's billing for Method II patients; the identity of the patients who converted from Method I to Method II; the conversion of patients from Method I to Method II; and billing records for Method II patients.  Defendants spent thousands of hours collecting documents from RCG and RCG Supply custodians likely to generate relevant documents, and then reviewing, and producing documents to the government.  Defendants produced well over 500,000 pages of documents during the investigation.  Defendants also voluntarily produced six witnesses for interviews with the government.  The government interviewed each of the witnesses for approximately 4 to 6 hours about RCG and RCG Supply. During the interviews, the government asked the witnesses specific questions about specific documents produced by defendants.

Subsequent to intervening in the case, plaintiff has served extensive discovery requests on defendants.  To date, plaintiff has served three sets of interrogatories, two requests for admissions, and eight requests for production of documents on defendants.  Many of the requested documents are duplicative of what plaintiff requested during its pre-intervention investigation.  For example, in its Second Request for Production of Documents, plaintiff again asked for any documents relating to leases by RCG Supply for the use or occupation of space. Plaintiff in its Third and Fourth Request for Production of Documents requested defendants to produce documents from custodians that it had previously sought documents from during the investigation, such Bryan Lipinski, Russell Dimmitt, David Dill, and Carolyn Latham.  In the

2

Fourth Request for Production, plaintiff also again sought the production of all documents relating to patient complaints about RCG Supply. Plaintiff again asked defendants to identify all directors, officers, and managing employees or supervisors of RCG Supply. Defendants have nevertheless worked diligently to respond in a timely fashion to plaintiff's discovery requests. Defendants have spent countless hours searching the hundreds of thousands of documents they previously collected as part of the prior investigation. In their responses, defendants specifically identify the responsive documents they previously produced by bates label and have produced any additional documents not previously specifically requested in the subpoenas.

Notwithstanding the seriousness of the allegations brought by the plaintiff, the amount of money it is seeking to recover, and the extensive amount of discovery it has imposed upon defendants both prior to and following its intervention in this case, which defendants have worked diligently to respond to, plaintiff has repeatedly refused to comply with its own discovery obligations. Plaintiff has refused to produce requested discovery that it is obligated to produce. Plaintiff appears to be taking the position that even though it is a party, it does not have to follow the same discovery rules that apply to every party in any civil case. Plaintiff has continually refused to produce documents on the grounds of doctrines and regulations that apply only when the government is <u>not</u> a party to a case. Plaintiff has refused to produce documents from any government agencies, contractors of agencies, the Department of Justice, or from US Attorneys' offices other than the Eastern District of Missouri. Plaintiff has limited its production of documents to only those that will support its own claims and defenses, regardless of whether they would support defendants' claims and defenses. Plaintiff has taken the position that it does not have to produce documents based on its own view that defendants' will not be able to succeed on their defenses. Plaintiff has limited its production of documents regarding Gambro

3

Supply Company despite having injected Gambro into this case through its complaint.  Plaintiff has failed to produce any emails or provide a reason for not producing them.

It is well established that when a government is a party, it "is, of course, subject to the rules of discovery."  U. S. v. Procter & Gamble Co., 356 U.S. 677, 681 (1958).  Defendants have attempted to resolve the deficiencies in plaintiff's production but to no avail.  As such, defendants are filing this motion to compel plaintiff to produce in response to defendants' discovery requests all relevant, non-privileged documents that support either parties' claims or defenses under the rules of discovery, just as any party to any civil case is required to do.

**Argument**

As discussed in detail in defendants' opposition to plaintiff's Motion to Strike and opposition to plaintiff's Motion for Protective Order, the degree of government knowledge of the contested activity (here, the running of a DME supply company) is essential to many elements of plaintiff's FCA claim and defendants' defenses, including on the elements of materiality, intent, and falsity.  Accordingly, defendants have sought discovery from plaintiff to find out what the government knew and understood about RCG, RCG Supply, and industry practice regarding the operations of DME supply companies and the government's related actions towards RCG, RCG Supply, and other DME supply companies.  Specifically, defendants have requested plaintiff to produce information, documents, the names of people with knowledge, and Rule 30(b)(6) witnesses to testify about the following:

- Audits, inspections, or reviews of RCG and RCG Supply by the government or government contractors (1st RFP 1-2)

- The government's involvement and actions in U.S. ex rel. Bidani v. Lewis, Case No. 97 C 6502, Northern District of Illinois (1st RFP 3; I-rog 2; Dep. Topics 1-7)

4

- Communications between Dawn Alexander and Gene Richter regarding RCG, RCG Supply, or Method II supply companies, or any inquiry by Ms. Alexander to the government regarding Method II or Method II supply companies (1st RFP 4-5, I-rog 1; Dep. Topics 8-9)

- Brochures, including CMS 2000 ESRD brochure, explanations, or other documents that describe the difference between Method I and Method II, drafts of such documents, and documents that were used to rely on in the drafting of same (1st RFP 1; I-rog 4-6; Dep. Topic 14)

- 2003 OIG "Home Dialysis Payment Vulnerabilities Report" (1st RFP 8-9; I-rog 7; Dep. Topic 16-18)

- 2001 OIG Report "Medical Equipment Supplies Compliance with Medicare Standards," OEI-04-99-00670 (1st RFP 11-12)

- December 16, 1988 OIG Audit Report No. A-09-07-00108 (Dep. Topic 19-20)

- Requests for guidance, complaints, or inquiries to the government regarding the operation of Method II supply companies (1st RFP 18; Dep. Topic 22-23)

- The investigation and permanent exclusion of Gambro Supply Company (1st RFP 19-21; Dep. Topic 24-27)

- The investigation of any Method II supply company by the government related to that company's ability to act as a DME provider (1st RFP 22; Dep. Topics 28-29)

- Medicare provider/supplier applications for companies attempting to obtain Medicare billing privileges as DME suppliers of dialysis supplies (1st RFP 45; Dep. Topics 10-11)

- All documents provided to and correspondence between plaintiff and Davita, Gambro Healthcare, Baxter Healthcare, Amgen, or any entity listed in plaintiff's Rule 26 disclosures regarding RCG, RCG Supply, or the decision to close a DME supply company (2nd RFP 2-10)

- All documents provided to plaintiff by any person or entity as part of the government's investigation of RCG Supply (2nd RFP 11).

Plaintiff has refused to produce all responsive, non-privileged relevant information in response to these requests. True and correct copies of plaintiff's responses to Defendants' First Request for Production of Documents, Second Requests for Production of

5

Documents, and First Set of Interrogatories are attached hereto as Exhibits A-C. Plaintiff has provided a number of reasons for failing to produce the requested information, none of which are sufficient for plaintiff to avoid its discovery obligation:

**First**, plaintiff has taken the position that it does not have to produce documents based on doctrines and regulations that apply to cases where the government is not a party to the case. Plaintiff claims in its discovery responses that the "plaintiff" in the case is the U.S. Attorney's Office for the Eastern District of Missouri. Plaintiff claims that it is not obligated to provide defendants with any information from any government agencies (such as HHS or CMS), the contractors of those agencies (who have contractual obligations to provide the government documents), or even from the Department of Justice or the U.S. Attorney's Office for the Northern District of Illinois. Thus, plaintiff claims that defendants must follow the procedures under U.S. ex rel. Touhy v. Reagan, 340 U.S. 462 (1951), to obtain documents from those agencies.

Plaintiff's position is contrary to its own pleading and to the law. Plaintiff claims in its First Amended Complaint that the plaintiff is the "United States Government." The Complaint specifically alleges that the case is brought "on behalf of the Department of Health and Human Services" which is "an agency and instrumentality of the United States." The complaint also alleges that HHS is the entity that has been defrauded. Under these circumstances – an intervened qui tam brought by the United States Government on behalf of the very entities from whom discovery is sought – plaintiff is required to produce documents from that agency.

The Touhy procedures do not apply where the United States is a party and sues on behalf of the agencies against which discovery is sought. As stated in Alexander v. FBI, 186 F.R.D. 66, 70 (D.D.C. 1998), "[t]he Supreme Court's holding in Touhy is applicable only in

6

<u>cases where the United States is not a party to the original legal proceeding</u>" (emphasis added). The legislative and regulatory goals of these rules apply to "conserve governmental resources where the United States is <u>not</u> a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." <u>Boron Oil Co. v. Downie</u>, 873 F.2d 67, 70 (4th Cir. 1989) (emphasis added). In contrast,

> "[i]n cases originating in federal court in which the federal government is a party to the underlying litigation, the <u>Touhy</u> problem simply does not arise. In such cases, there is no requirement that the litigant proceed under the APA . . . . When the United States is a party to litigation, 'judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers … [and] <u>[w]hen the government or one of its agencies comes into court … it is to be treated in exactly the same way as any other litigant</u>. Appointment to office does not confer upon a bureaucrat the right to decide the rules of the game applicable to his crusades or his lawsuits.'" <u>Alexander</u>, 186 F.R.D. at 70-71 (emphasis added).

When, as here, the government has intervened in a False Claims Act case, it is party to the case and:

> "[I]t is well established that the Government, as a litigant, is bound by the rules of discovery to the same extent as any other litigant. See <u>United States v. Procter & Gamble Co.</u>, 356 U.S. 677, 681 (1958). Thus, fundamental fairness dictates that the <u>Touhy</u> regulations should not apply where the Government is a party to the litigation. <u>Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537</u>, 334 F.2d 381, 384 (10th Cir.1964) (holding that federal agencies are bound by discovery rules in the same manner as any other litigant)." <u>U.S. ex rel. Roby v. Boeing</u>, 189 FRD 112 (SD Ohio 1999)(rejecting any Touhy requirements in a qui tam case where the government intervened).

The United States is a party to an intervened false claims act case and plaintiff has specifically alleged as such in paragraph 3 of its Complaint. Given that the United States is a party, HHS's restrictions do not apply to this case.

The documents of HHS and the other agencies are within the control of the United States Government, the plaintiff in this case. Plaintiff has brought the case on behalf of HHS.

7

Courts have repeatedly held that the government cannot "evade" its discovery obligations "by claiming lack of control over the files or procedures of other executive branch agencies." United States v. Safavian, 233 F.R.D. 12, 15 (D.D.C. 2005). "The knowledge and access test is met when there exists any information in the possession, custody or control of a federal agency participating in the same investigation of the defendant." United States v. W. R. Grace, 401 F. Supp. 2d 1069, 1075 (D. Mont. 2005). The government is deemed to be "in possession of agency files where the agency involved is charged with administration of the statute allegedly violated[.]" Id. at 1076. "[T]he government cannot compartmentalize the Department of Justice and permit it to bring a charge affecting" another government agency "but deny having access to [that agency's] files." United States v. Deutsch, 475 F.2d 55, 57 (5th Cir. 1973), overruled on other grounds by United States v. Henry, 749 F.2d 208 (5th Cir. 1984).

Plaintiff appears to agree that the Department of Justice is a plaintiff in this case. Both the Chicago and Washington offices are part of the Department. As such, plaintiff should be required to search for and produce all relevant, non-privileged requested documents from the U.S. Attorney's Office for the Northern District of Illinois and the Department of Justice. Plaintiff attempts to rely on the Department of Justice's "testimonial regulations" set forth in 28 C.F.R. § 16.22 to refuse to produce the requested documents and information to defendants. See Exhibit D. However, 28 C.F.R. § 16.22, by its own terms, applies only "in Federal and State proceedings in which the United States is **not** a party" (emphasis added). Such is not the case here.

The requested information from HHS, DOJ, and other U.S. Attorney's offices is essential to defendants' defense. By invoking the Touhy regulations for the various agencies and stating that defendants must make FOIA requests and serve third-party subpoenas, plaintiff not

8

only ignores its own pleading and law, but is also attempting to significantly delay this case. The requested documents meet the standards for discovery set forth in Rule 26(b)(1), and plaintiff should be required to produce them.

**Second**, plaintiff has expressly limited its production to only those documents "that the Government may use to support **its** claims and defenses" (emphasis added). Whether the production of documents supports the producing parties' claims or defenses is not the proper standard for discovery. Defendants are entitled to discovery of matters that support their claims and defenses as well. Federal Rule of Civil Procedure 26(b)(1) provides that "parties may obtain discovery regarding any non-privileged matter that is relevant to any parties' claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter" (emphasis added); see also Alden v. Mid-Mesabi Assoc. Ltd. P'ship, 2008 WL 2828892 (D. Minn. July 21, 2008) ("The Rules governing discovery permit "[p]arties [to] obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," Rule 26(b)(1), Federal Rules of Civil Procedure . . . , and do not allow a responding party to select the discovery requests that [it] will honor, and those that [it] will simply ignore").

Similarly, plaintiff contends that it does not have to produce documents that it thinks defendants are requesting to support their affirmative defenses of waiver, estoppel, and laches because plaintiff believes defendants cannot establish those defenses. Again, whether plaintiff believes defendants can succeed on their defenses is not the standard for discovery. Furthermore, as set forth in detail in defendants' response to plaintiff's Motion for Protective Order, all the requested documents are highly relevant to the government's degree of knowledge, the falsity of any statement, materiality, and to whether RCG had the requisite level of intent.

9

The requested information is relevant to the meaning and interpretation that the promulgators of material regulations adopted and espoused. The documents are further relevant to defendants' defense that the supplier standards are not, and never have been, considered conditions of payment. Defendants will be severely prejudiced if such relevant, non-privileged documents are not produced.

**Third**, plaintiff attempts to limit the production of documents regarding the investigation and permanent exclusion of Gambro Supply Company. In response to defendants' discovery requests, plaintiff referred defendants to publicly available documents and declined to provide any additional information about the investigation or the government's view of Gambro. Plaintiff's complaint and discovery places RCG's knowledge of the government's investigation of Gambro squarely at issue. These documents are relevant to and necessary for defendants' defense of these allegations.

Plaintiff has also attempted to limit the production of Gambro documents to only those that relate to RCG's knowledge of the Gambro investigation and permanent exclusion. Yet, plaintiff has alleged in its complaint that the exclusion of Gambro "demonstrat[es] that compliance with the statutory and regulatory requirements for independence by dialysis supply companies **was material** to Medicare" First Amend. Comp., ¶ 62(emphasis added). Defendants are clearly entitled to discovery on whether there actually is a statutory and regulatory requirement for independence and, if so, whether such a requirement was actually material to Medicare.

**Fourth**, plaintiff has not produced a single email. Defendants document requests specifically asked for the production of emails. Plaintiff has not provided any explanation for why it has not produced responsive, non-privileged emails. If plaintiff is refusing to produce

10

emails on the grounds of privilege, plaintiff should state as much and include those emails on any forthcoming privilege log. See Fed. R. Civ. P. 26(b)(5); Dekalb Genetics Corp. v. Syngenta Seeds, Inc., 2007 WL 2030130 (E.D. Mo. 2007) ("When a party withholds documents or materials under a claim of privilege, the rules place the burden on the party asserting the privilege to prove its applicability").

**Fifth**, plaintiff has refused to produce any documents provided to it by Davita or Baxter relating to RCG, RCG Supply, or the decision to close a DME supply company. Plaintiff initially objected to the production of documents provided to it by Baxter on grounds of work product. See Ex. B. Plaintiff provided no explanation for how documents provided to it from Baxter could be work product. The requested documents are either letters between plaintiff and Baxter, which are not privileged, or underlying documents from Baxter, which are not privileged.

Plaintiff objected to producing documents regarding Davita on grounds that the documents were settlement discussions and inadmissible under Federal Rule of Evidence 408. This is not a reason to avoid producing responsive documents. Whether documents come into evidence under Rule 408 is a completely separate issue from whether they need to be provided in discovery. Rule 26(b)(1) provides that the scope of discovery includes "any non-privileged matter that is relevant to any party's claim or defense," and "[r]elevant evidence need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence" (emphasis added).

Plaintiff now contends that defendants should ask for information directly from Davita and Baxter, and argues that by not doing so, defendants "appear[] to be more interested in figuring out what type of documents the Government chose to seek from these companies,

11

namely discovering the thought process of Government attorneys, rather than just obtaining actual documents from these companies regarding any alleged defenses defendants may have." As set forth in detail in defendants' oppositions to plaintiff's Motion to Strike and Motion for Protective Order, the level of government knowledge is an essential factor to plaintiff's FCA claims and defendants' defenses. The types of documents the government has in its possession from other companies in the dialysis industry regarding the matters set forth in the complaint (i.e., RCG, RCG Supply, and the closing of any DME supply company) is directly relevant to defendants' defenses. The government is a party to this case and defendants are entitled under the Federal Rules to seek and obtain discovery from it in support of its claims and defenses.

Plaintiff listed both Baxter and Davita in its Rule 26 disclosures as entities who are likely to have discoverable information which plaintiff may use to support its claims and defenses. Documents provided to the government regarding RCG, RCG Supply, and the closing of any DME supply company appear to go to the heart of plaintiff's case. Plaintiff in fact requested the exact same types of documents from defendants. See Pl. First Requests for Production, Nos. 1-4, attached hereto as Exhibit E. Defendants have produced hundreds of pages of documents responsive to these requests. Defendants ask plaintiff to do the same. Plaintiff cannot inject these third-parties into this case and now shrink from its obligation to produce all relevant, non-privileged documents related to them.

**Sixth**, plaintiff has refused to produce documents in response to defendants' Second Requests for Production Nos. 10 and 11. Request No. 10 asks for all documents and correspondence between plaintiff and any person or entity listed in its Rule 26 disclosures that refer or relate to RCG Supply, RCG, or the decision to close a DME supply company. Request

12

No. 11 asks for all documents provided to plaintiff by any person or entity as part of the government's investigation of RCG Supply.

Plaintiff initially objected to these requests as seeking information not calculated to lead to the discovery of admissible evidence. However, the request is for documents between plaintiff and the people and entities listed in its Rule 26 disclosures which are, by definition, those people plaintiff may use to support its claims and defenses. Likewise, the requests ask for information about named defendants in the case – RCG and RCG Supply. The requested documents are clearly relevant as they relate to documents between plaintiff and the people or entities which it has stated it may use to support its claims and defenses about named defendants in this case.

Plaintiff also states that it has produced all documents responsive to these requests that it may use to support its claims and defenses. For the reasons set forth above, defendants request that plaintiff be compelled to produce responsive, non-privileged documents that may support any party's claims and defenses, and not just plaintiff's. See Fed. R. Civ. P. 26(b)(1).

Plaintiff also objects to the production of documents in response to these requests on the grounds that they seek work product. In its November 7 letter, plaintiff states that "discovery requests which seek to identify specific documents that were used or obtained by counsel or list all witnesses that were interviewed by counsel are requests that seek work product," and cites four cases in support. Exhibit D. None of the cases plaintiff cites hold that documents provided by a third-party to a lawyer are in and of themselves privileged work product. In fact, contrary to plaintiff's representation, the court in Norflet v. John Hancock Fin. Serv., Inc., 2007 WL 433332, *3 (D. Conn. Feb. 5, 2007), held that the identities of witnesses interviewed by an attorney prior to filing a lawsuit were not protected from disclosure by the

13

work product doctrine and noted that "[n]umerous other courts have consistently held that the names and addresses of individuals interviewed by counsel 'who have knowledge of the facts alleged in the complaint are not protected from disclosure by the work product doctrine.'"  See also Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000) (holding that the content of (not the existence of) attorney notes and memoranda regarding witness interview was opinion work product); Santiago v. Miles, 121 F.R.D. 636, 638 (W.D.N.Y. 1988) (holding that "printouts produced from a computer program developed by counsel and another government employee in response to the filing of this lawsuit" were attorney work product (emphasis added)); U.S. v. District Council of NYC, 1992 WL 208284 (defendant sought deposition of U.S. Attorney's Office and FBI agent who worked with counsel on preparation of case).

## Conclusion

All of the information and documents requested by defendants meet the requirements for discovery set forth in Rule 26(b)(1).  As set forth in detail above, without this information, defendants will be severely prejudiced in their defense of this case.  Accordingly, defendants respectfully request that their motion to compel be granted.

Dated: November 13, 2008                    Respectfully submitted,

**DOWD BENNETT LLP**

By:    /s/ James F. Bennett
     Edward L. Dowd, Jr. #2668
     James F. Bennett, #65673
     Megan S. Heinsz, #506333
     7733 Forsyth St., Ste. 1410
     St. Louis, MO 63105
     (314) 889-7300 (phone)
     (314) 863-2111 (fax)

     ARENT FOX LLP
     Lisa A. Estrada
     Baruch Weiss
     1050 Connecticut Avenue, NW
     Washington, DC 20036-5339
     Telephone: (202) 857-6000
     Facsimile: (202) 857-6395

Attorneys for Defendants Renal Care Group, Renal Care Group Supply Company, and Fresenius Medical Care Holdings, Inc.

**CERTIFICATE OF SERVICE**

     I hereby certify that on this 13th day of November, 2008, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of the filing to all counsel of record.

                                       /s/ James F. Bennett